UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X   Case No.:
JENIFER AN,

                               Plaintiff,   **COMPLAINT**

    -against-

UNIVERSAL MUSIC GROUP, INC., individually and   Plaintiff Demands
d/b/a INTERSCOPE CAPITOL LABELS GROUP, STINK   a Trial By Jury
DIGITAL USA LLC, and KANYE WEST a/k/a YE,
individually,

                              Defendants.
------------------------------------------------------------------X

Plaintiff, by and through her attorneys, ARCÉ LAW GROUP, P.C., hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the NYC Gender Motivated Violence Act ("GMVA"), N.Y.C. Admin Code §§ 10-1103 *et seq.*, seeking damages to redress the injuries she has suffered as a result of being sexually assaulted and strangled by Defendant KANYE WEST ("WEST").

2. Defendant WEST is an award-winning musical icon who is widely recognized as one of the most talented recording artists in recent history.

3. Largely behind Defendant WEST's success is music giant, Defendant UNIVERSAL MUSIC GROUP, INC., individually and d/b/a INTERSCOPE CAPITOL LABELS GROUP ("UNIVERSAL MUSIC"),[1] a music company that touts its commitment to social responsibility practices.[2]

---

[1] Defendant UNIVERSAL MUSIC is the parent company of INTERSCOPE CAPITOL LABELS, which was formerly known as Interscope Records.
[2] Defendant UNIVERSAL MUSIC was awarded the "UMG X REVERB AMPLIFIER AWARD," a joint effort between Defendant UNIVERSAL MUSIC and the nonprofit organization, REVERB, to recognize artists who have shown an "outstanding commitment to creating positive change through their music and their reach." *See* https://www.universalmusic.com/social-responsibility/.

4. However, Defendant UNIVERSAL MUSIC's "commitment" only stretches as far as its profits. Defendant UNIVERSAL MUSIC and Defendant STINK DIGITAL USA LLC ("STINK") enabled Defendant WEST to gag Plaintiff on a music video set, without consequence.

5. In reality, Defendant WEST's gendered, hateful, and abusive controversies were a brand, which was too profitable for Defendant UNIVERSAL MUSIC to intervene, despite his unlawful conduct.

6. This case exemplifies how Defendant UNIVERSAL MUSIC systematically discriminates against women, by continuing to work with artists with well-documented histories of sexual harassment and discrimination, and by failing to implement and/or enforce policies or practices to prevent future sexual harassment.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

8. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York. 28 U.S.C. § 1391(b).

## PARTIES

9. Plaintiff is an Asian female resident of the State of California, County of Los Angeles.

10. Defendant WEST is a male resident of the State of Wyoming, County of Park.

11. At all times material, Defendant UNIVERSAL MUSIC was and is a foreign business corporation duly existing under the laws of the State of Delaware.

12. At all times material, Defendant UNIVERSAL MUSIC was and is a foreign business

corporation authorized to conduct business in the State of New York, and which does conduct business in the State of New York.

13. At all times material, Defendant STINK was and is a limited liability company duly existing under the laws of the State of New York.

14. At all times material, Defendant UNIVERSAL MUSIC served as a distributor of the United States version of recording artist, La Roux's music video, titled, "In for the Kill."

15. At all times material, Defendant UNIVERSAL MUSIC contracted with Defendant STINK to produce the "In for the Kill" music video.

16. At all times material, Defendant UNIVERSAL MUSIC was and is the parent company of Polydor Records, the record label to which La Roux was signed.

17. Defendants WEST, UNIVERSAL MUSIC, and STINK are hereinafter collectively referred to as Defendants.

18. At all times material, Defendants UNIVERSAL MUSIC and STINK exercised significant control over the terms and conditions of Plaintiff's employment.

19. At all times material, for the purpose of the music video, Defendants UNIVERSAL MUSIC and STINK were Plaintiff's joint employers.

## MATERIAL FACTS

20. In 2009, Plaintiff began her career in the entertainment industry as a finalist on America's Next Top Model.

21. In or around 2010, Plaintiff was hired as a background actor/model in the U.S. version of La Roux's music video for her song, "In for the Kill" ("the music video").[3]

22. As part of the overall production and distribution efforts for the music video, Defendant

---

[3] Polydor produced and distributed the United Kingdom version of the music video, which was released on March 31, 2009.

UNIVERSAL MUSIC arranged for Defendant WEST to appear in the music video to increase its exposure and maximize eventual profits.

23. On or about September 7, 2010, the music video was filmed in a suite at the Chelsea Hotel in New York City.

24. A few hours into the shoot, Defendant WEST arrived on set with an entourage, which included his then girlfriend, Selita Ebanks, and several male friends (names withheld).

25. Director, Kinga Burza, was also on set. However, Defendant WEST took control of the production and the production team. Specifically, he ordered the female background actors/models, including Plaintiff, to line up in the hallway. He evaluated their appearances, pointed to two of the women, and then commanded them to follow him.

26. Then, Defendant WEST pointed at Plaintiff and said, "**Give me the Asian girl**." Plaintiff felt uncomfortable but reluctantly acquiesced.

27. In the suite was a long couch, which was placed in the back of the room. There, with a camera facing the couch, Defendant WEST directed Plaintiff to sit next to him, while the crew members silently watched.

28. As Plaintiff was only wearing revealing lingerie, she told Defendant WEST, "I'm not wearing very much," to which Defendant WEST replied, "**That's why I chose you**."

29. Plaintiff reasonably believed that Defendant WEST over-sexualized and fetishized her, given previous music lyrics wherein he explicitly sexualized Asian women.[4]

30. Defendant WEST then ordered the production team to start the playback music. However, Defendant WEST did not know his assigned lyrics and instead rambled, "Rawr, rawr, rawr."

31. Shortly after, Defendant WEST ordered the other two actors/models to leave, presumably to

---

[4] "Eatin' Asian pussy, all I need was sweet and sour sauce." Defendant WEST, *I'm In It* (2013).

begin filming the sexual assault to which he was about to subject Plaintiff.

32. Defendant WEST then pulled two chairs near the camera, positioned them across from each other, and instructed Plaintiff to sit in the chair in front of the camera.

33. After Plaintiff submitted, Defendant WEST told the cameraman, "**I want a camera on [her]**." The camera was then positioned to zoom in on Plaintiff's face and Defendant WEST's hands.

34. Next, Defendant WEST instructed the production crew, *including the director*, to turn the camera monitors towards him so he could watch what was captured on camera.

35. **Remarkably, the crew complied without asking any questions, and Defendant WEST continued staging his own production**.

36. At that moment, Defendant WEST stood towering over Plaintiff and was breathing heavily.

37. **On camera, Defendant WEST began to choke Plaintiff with one hand. He then wrapped his other hand around her neck and continued to strangle her with *both* hands.**

38. **Next, Defendant WEST smothered Plaintiff's face with *both* of his hands, which smeared her makeup. He then rammed several fingers down her throat, continuously moved them in and out, and gagged her (which Plaintiff believed lasted for over a minute) to emulate forced oral sex**, **and screamed, "This is art. This is fucking art. I am like Picasso."**

39. Defendant WEST sexually assaulted Plaintiff in a manner similar to pornographic gagging/deep throat/BDSM fetishes.[5]

40. Nevertheless, Plaintiff moved her tongue away from Defendant WEST's gyrating hand, started to panick, and looked around the set, hoping to see anyone who could intervene. At this point, despite being in a room *full of people*, Plaintiff believed that she was "on her own" in

---

[5] A gagging/deep throat fetish is where men derive sexual pleasure in seeing their partner gag when they are performing oral sex in order to feel dominant. BDSM is a term that includes several practices, including bondage, discipline, dominance, submission, and sadism.

5

navigating the assault.

41. During the assault, Plaintiff struggled to breathe and felt as if she had temporarily blacked out. When *Defendant WEST* decided that he was finished with Plaintiff, her face was covered in saliva and smeared makeup.

42. **Under the New York Penal Law, this act constituted Strangulation in the Second Degree, Sexually Motivated Felony, and Assault in the Third Degree**.[6]

43. As Plaintiff left the set, she looked towards video village,[7] and briefly locked eyes with Ms. Ebanks, **who abruptly turned her head away from Plaintiff**.

44. Though nearly *everyone* on set believed that Defendant WEST had sexually assaulted Plaintiff, including members of the production team who subsequently raised concerns, Defendants UNIVERSAL MUSIC and STINK failed to investigate or otherwise take remedial action.

45. True to form, various *men* within the industry then contrived to cover up Defendant WEST's sexual assault.

46. For example, shortly after the music video production, a mutual friend of La Roux and Defendant WEST's asked about her experience working with Defendant WEST on the music video. She explained that she saw some "upsetting, unsettling" behavior[8] (presumably referencing the sexual assault on the music video set).

47. Then, a few weeks later, **Defendant WEST (and others (names withheld)) demanded that La Roux apologize to Defendant WEST in writing.**

48. **Defendant WEST's demand was related to his suspicion that La Roux had disclosed his**

---

[6] *See* N.Y. Penal Law §121.12, §130.91, and §120.00.
[7] Video village is a commonly used phrase within the film industry, which describes the area on set where monitors are connected to the cameras in order to live-stream the footage.
[8] *See* https://www.complex.com/music/a/fnr-tigg/la-roux-singer-kanye-west-made-her-write-apology-weird-encounter.

**sexual assault of Plaintiff.**

49. Fearing Defendant WEST's power and ability to ruin her career, La Roux agreed. Though she apologized, she also voiced her disdain for his behavior.[9]

50. For decades, Defendant UNIVERSAL has promoted/perpetuated a culture rampant with sexual harassment and assault by continuing to work with male artists who are known to sexually abuse women.[10] Accordingly, Defendant WEST remains immensely powerful.

51. To that end, during the music video, Defendant UNIVERSAL MUSIC failed to implement or enforce a code of conduct.

52. To date, Plaintiff continues to cope with the trauma and negative impact on her career stemming from Defendant WEST's assault, and the contrived effort of both the record labels and other high-profile figures within the industry to "bury" the incident.

53. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

54. Defendant WEST would not have assaulted Plaintiff but for her sex/gender.

55. Defendants UNIVERSAL and STINK had a duty to monitor Defendant WEST's behavior on the music video set as the production constituted a business activity within which every Defendant was contractually involved.

56. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

57. As a result of Defendants' predatory and intolerable treatment of Plaintiff, she suffered severe

---

[9] *See id.*
[10] A public report was published on February 27, 2024, chronicling the history and financial impact of sexual abuse and coverups in the music industry, which took place from the 1950's to present. *See Sound Off Make the Music Industry Safe Report*. February 27, 2024. Notably, almost fifty percent of the individuals accused of sexual harassment in the report were affiliated with Defendant UNIVERSAL MUSIC. The information published in the report is based off public information, including news reports, social media, third party reports, legal records, shareholder actions, and legislative actions. The report does not account for other numerous instances of sexual abuse, which have been buried by the music industry.

emotional distress and physical ailments.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer monetary damages, physical injury, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

59. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

**AS A FIRST CAUSE OF ACTION**
**UNDER NEW YORK CITY ADMINSITRATIVE CODE**
**GENDER-MOTIVATED VIOLENCE PROTECTION ACT**

60. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. The Administrative Code of City of NY § 10-1103 provides that:

    a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

    b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

62. The Administrative Code of the City of NY § 10-1104 provided that,

    "Any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction…"

**Defendant WEST**

63. As stated above, Defendant WEST is civilly liable for violating various criminal laws within the New York Penal Law under the GMVA.

64. Defendants UNIVERSAL MUSIC and STINK committed, directed, enabled, participated in, and conspired in Defendant WEST's commission of the crime of violence motivated by gender and are therefore also liable under the GMVA.

**Defendant UNIVERSAL MUSIC**

65. Defendant UNIVERSAL MUSIC aided and abetted Defendant WEST's sexual assault based on the existence of their agency relationship.

66. Defendant UNIVERSAL MUSIC had a duty to prevent and remedy sex/gender discrimination and sexual harassment on the music video set.

67. Defendant WEST used his actual and/or apparent authority as Defendant UNIVERSAL MUSIC's agent to control the production and sexually assault Plaintiff.

68. Defendant UNIVERSAL MUSIC knew or should have known that Defendant WEST was capable of sexually assaulting Plaintiff, given his publicly documented history of misogynistic behavior, but unreasonably failed to stop his conduct.

69. For example, prior to this incident, Defendant WEST made several public statements, both in his music and on record, promoting the aggressive sexualization of women.[11]

70. Moreover, the music video for Defendant WEST's song, "Monster," was recorded prior to the "In for the Kill" music video.

---

[11] For example, in the song titled, "Gold Digger," which was released in 2005, Defendant WEST rapped about receiving oral sex in exchange for giving women material gifts, "Get down girl, go 'head, get down.'" In 2009, Defendant WEST interrupted Taylor Swift as she accepted her grammy award for the Best Female Video during the VMA's, telling the crowd that Beyonce was more deserving of the award. As a misogynist, Defendant WEST thought that he should have the final say as to who could win the award among two young female artists. Defendant WEST corroborates the misogynistic intent behind his rant during the 2009 VMA's in his song, "Famous," where he raps, "I feel like me and Taylor might still have sex, / why? I made that bitch famous!"

71. Defendant UNIVERSAL MUSIC, through its subsidiaries, Def Jam Recordings, and Roc-A-Fella Records,[12] also produced the "Monster" music video.

72. The music video was widely criticized for displaying dead women in a sexual manner. Specifically, one scene captured Defendant WEST in a bed with numerous dead female models in lingerie, seemingly preparing to sexually assault them, while another scene captured female models in lingerie, hanging from the ceiling with nooses around their necks.[13]

73. In fact, the "Monster" music video was banned from MTV, and when it was released, the video came with a paternalistic disclaimer, stating, "**the following content is in no way to be interpreted as misogynistic or negative towards any groups of people. It is an art piece and it shall be taken as such**."

74. This is just another example of Defendant WEST's sex/gender discrimination, which he consistently excused as "art."

75. Through Defendant UNIVERSAL MUSIC's involvement in the production of "Monster," it knew or should have known of Defendant WEST's animus towards women.

76. Finally, Defendant UNIVERSAL MUSIC provided no reasonable avenue for complaint and turned a blind eye to Defendant WEST's sexual assault of Plaintiff.

**Defendant STINK**

77. Defendant STINK aided and abetted Defendant WEST's sexual assault based on the existence of its agency relationship with Defendant UNIVERSAL MUSIC.

78. Defendant STINK knew or should have known that Defendant WEST would inflict gender

---

[12] In or around 1999, Defendant UNIVERSAL MUSIC acquired Def Jam Recordings. At the time, Def Jam Recordings owned fifty percent of Roc-A-Fella Records. In or around 2004, Def Jam Recordings acquired the other fifty percent stake in Roc-A-Fella Records. Accordingly, Defendant UNIVERSAL MUSIC was the parent company of both Def Jam Recordings and Roc-A-Fella Records when the Monster music video was produced.

motivated violence based on the existence of its agency relationship with Defendant UNIVERSAL MUSIC.

79. Finally, Defendant STINK provided no reasonable avenue for complaint and turned a blind eye to Defendant WEST's sexual assault of Plaintiff.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful gender motivated violence prohibited by the New York City Administrative Code;

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

C. Awarding Plaintiff Punitive Damages;

D. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
November 22, 2024

**ARCÉ LAW GROUP, P.C.**

By: /s/ Jesse S. Weinstein, Esq.
Jesse S. Weinstein, Esq.
Christine E. Hintze, Esq.
Melissa N. Berouty, Esq.
45 Broadway, Suite 430B
New York, New York 10006
(212) 248-0120
j.weinstein@arcelawgroup.com

11

c.hintze@arcelawgroup.com
melissa.berouty@arcelawgroup.com